Opinion of the court delivered by
Judge Peck.
The first count charges- Rice, that, with force and arms, he wilfully, wickedly, Unlawfully, feloniously and falsly did make, forge and counterfeit, and did cause to be, &c. a certain acquitance and receipt for money, to wit: for all demands that a certain John B. Kelly and a certain William Porter had against him, the said Rice; which receipt is in these words, &c.
*433 The second count charges, that the said Wm. P. Rice was indebted to John B. Kelly and Wm. Porter in a large sum, for work and labor by them done and performed; and being indebted, as aforesaid, with intention to defraud the said Kelly and Porter, with force and arms, did falsely, &c. make, forge and counterfeit a certain receipt or ac-quitance, purporting to be executed by the said Kelly and Porter; by writing said receipt over the signature of the said Kelly and Porter, &c. in these words: “Received payment in full of all demands that we have against William P. Rice, up to,, this day. July 14, 1829.
JOHN B. KELLY,
WILLIAM PORTER.
And the Grand Jury aforesaid, upon their oath aforesaid, do say that the said William P. Rice, at, to wit &c. on the day &c. by the means aforesaid, the said paper writing, commonly called a receipt, feloniously, did then and there falsely make, forge and counterfeit to the damage of the said John B. Kelly and William Porter, contrary to the form of the statute, &c.
The defendant pleaded not guilty, and was put upon his trial.
The bill of exceptions shews these facts, in relation to selecting a traverse jury: — In trying the pannel, when the jurors declared that they had formed an opinion as to the guilt or innocence of the defendant, the court refused to discharge them, but propounded the following questions successively to them:
1. Have you expressed that opinion?
2. Was that opinion formed from conversing with, or hearing the witnesses converse upon the subject?
3. Do you think, notwithstanding that opinion, you are in a condition to try the cause impartially?
All of these questions being answered in the affirmative, the jurors were presented to the prisoner forelection; to which the defendant objected, and as such, insisted on his right of peremptory challenge; but was overruled.”
The first count in the indictment, we are inclined to think, is not sufficient in law, omitting as it does, to charge *434 any debt due from the defendant to Kelly and Porter.— pQr wan£ 0f this averment, the receipt might be harmless. The second count, for the present, may be taken as sufficient — though certainly inartificially drawn.
The question raised in the record, touching the manner of testing the qualification of jurors, is one of great importance. The right of trial by an impartial jury is guaranteed to every man. The mode of arriving at that degree of impartiality contemplated by the Constitution, should be fixed' and uniform. Most persons who have witnessed the trial of an accused for crime, in counties of small population, can scarcely have failed to observe how few, called as jurors, stand indifferent toward a prisoner. If he be a stranger or an obscure individual, the more certainly will that evidence of prejudice be exhibited. Men of wealth or of consequence in society, when accused, though they may have to encounter the force of prejudice, nevertheless have their friends and adherents.
From the bill of exceptions, in the present case, we are to take it as proved, that “the jurors” when called, declared on oath that they had formed opinions touching the guilt or innocence of the prisoner. — That they had expressed their opinions. That those opinions had been formed from conversing with the witnesses, or from hearing them converse upon the subject. And to the jurors, thus impressed, the question is severally put — Do you think, notwithstanding your opinion, you are in a condition to try this cause impartially?
What is the condition of a juror when such a question is propounded? He will feel it as an appeal made to his pride and magnanimity. He will naturally imagine he can. Nay, he will suppose he has already divested himself of his prepossessions; and he will answer in the affirmative. But who, that has taken the slightest view of human nature, can help seeing that immediately on hearing a repetition of the same evidence which first raised his prepossessions, they will return upon him. Or, placing himself upon his resolution, he will err on the other side, and reject the evidence which, but for the appeal to *435 his pride, would hare had its due weight. Hence the wisdom of the rule which declares that jurors should omni exceptiona majoris. Prejudice or partiality operates a disqualification to a person called as a juror. If he, on enquiry, discloses the fact when examined to the point, he ought not to be put to the prisoner. ■ It is unjust toward the accused, because he is sensible he has difficulty to encounter, which the constitution designed to guard him against; and it is unjust to the juror, thus to force upon him the double duty of guarding against his formed par-tialities or prejudices, while he is charged with perhaps the life of the accused.
Felix Grundy, for the plaintiff in error.
H. L. Turney &r J, B. Rogers, (Att. Gen.) for the State.
The duty upon a juror is sufficiently weighty, when he comes into the box to receive impressions from the evidence he may hear. On this point in the case, we are of opinion that the court erred in the mode of selecting the jury-
A juror who declares he has formed and expressed an opinion, from having heard the witnesses or testimony, touching the alleged crime, is incompetent to set as a juror upon the trial, and therefore subject to peremptory challenge.
Judgment reversed and cause remanded for a new trial.